FILED
Apr 01, 2020
07:15 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **ERIC TUNSTALL,** | ) | **Docket No. 2018-08-0301** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File No. 6637-2017** |
| | ) | |
| **SAIA, INC.,** | ) | |
| **Employer.** | ) | **Judge Deana Seymour** |

---

## EXPEDITED HEARING ORDER

---

Since 2017, Eric Tunstall sustained three back injuries. On two separate occasions, a forklift struck him at work. In addition, he recently had a non-work-related car accident. SAIA contended it provided Mr. Tunstall all benefits to which he was entitled for the injury at issue and argued his current complaints were not related to his initial work injury.

The Court held an Expedited Hearing on March 11, 2020, to determine whether SAIA owes Mr. Tunstall a new panel of spine specialists and temporary disability benefits related to his January 2017 work accident. The Court concludes SAIA does not for the reasons below.

### History of Claim

Mr. Tunstall works for SAIA as a dock worker. On January 24, 2017, he injured his back at work.

Mr. Tunstall received treatment from Dr. John Hayes. He complained of right-ankle pain and left-sided back pain. Dr. Hayes diagnosed a right-ankle ligament sprain and lumbar contusion, and he recommended physical therapy and medication. He placed Mr. Tunstall on modified duty until referring him to an orthopedic specialist.

1

Mr. Tunstall began treating with Dr. John Lochemes in March. Dr. Lochemes ordered an MRI, which showed only chronic degenerative findings. Dr. Lochemes released him at maximum medical improvement in April.

In October, Mr. Tunstall returned to Dr. Lochemes with radicular complaints in his right leg. Dr. Lochemes ordered a new MRI, which showed foraminal narrowing at L4-5 and L5-S1. Mr. Tunstall received injections that temporarily relieved his back pain. By January 2018, Dr. Lochemes noted that Mr. Tunstall had severe pain and radicular symptoms on both sides. He referred him to a neurosurgeon.

SAIA provided a panel of neurosurgeons, and Mr. Tunstall selected Dr. Laverne Lovell. In April, Dr. Lovell diagnosed severe spondylitic disease and stenosis at L4-5 and kept Mr. Tunstall on light duty. Dr. Lovell mentioned surgery but stated that Mr. Tunstall was not symptomatic enough or interested in it. Therefore, he referred him to pain management and ordered a functional capacity evaluation. The FCE concluded that Mr. Tunstall could work at medium-level duty. Dr. Lovell released Mr. Tunstall at MMI on June 6 without restrictions.

SAIA provided a panel of pain management providers, from which Mr. Tunstall chose Dr. Ryan McGaughey. Dr. McGaughey noted that Mr. Tunstall underwent physical therapy and previous injections, which had not helped. According to Dr. McGaughey, Mr. Tunstall's legs had started "giving out." He ultimately recommended a second surgical evaluation by Dr. Lovell.

In February 2019, Dr. Lovell reviewed updated MRIs and found nothing to indicate surgery. He saw nothing he considered an injury from any work accident and noted that the radiologist described the canal narrowing from L3-S1 as a congenital finding. However, he recommended a second opinion because Mr. Tunstall was "dissatisfied" with his opinion. Dr. Lovell concluded, "I am finished with the patient's evaluation, work up and treatment. I am releasing him. He stays at a full duty work status and no follow-up is given."

Mr. Tunstall continued working for SAIA after his release, and on May 14, he sustained another work-related back injury. He received authorized treatment from Dr. Hayes, who immediately placed Mr. Tunstall on modified duty and referred him to an orthopedic specialist. Mr. Tunstall selected Dr. Thomas Giel from a panel.

Mr. Tunstall complained to Dr. Giel of low-back pain but noted his symptoms were not new, just worse. Due to the complicated nature of the case, Dr. Giel recommended that Mr. Tunstall obtain an independent medical examination with a spine specialist who could determine which, if any, of his complaints stemmed from his new injury and if he received sufficient treatment for the prior injury. He continued Mr. Tunstall on restricted duty but discharged him from care.

In August, Mr. Tunstall attended an IME with Dr. Sam Murrell.[1] According to Dr. Murrell, all the CT scans showed degenerative changes and no acute abnormalities. Dr. Murrell found that Mr. Tunstall had no new injury from the May 2019 accident and required no further treatment for that accident. Instead, he recommended follow-up with Mr. Tunstall's authorized doctor for the January 2017 injury. In a later note, Dr. Murrell clarified that he referred Mr. Tunstall back to Dr. Hayes.

On February 11, 2020, Mr. Tunstall injured his back again in a car accident. He treated with Champion Orthopaedics, but the only record introduced from this treatment was a work status report returning him to work on February 17.

Mr. Tunstall returned to Dr. Hayes on February 17 and advised him of the car accident. Dr. Hayes noted that Mr. Tunstall was treating with an orthopedic and that that doctor would have to release Mr. Tunstall before Dr. Hayes could return him to full-duty work.

Mr. Tunstall testified that his symptoms have worsened, he felt like someone was "punching" him in the back, and he started using a cane on his own because he was afraid his legs might give out. Mr. Tunstall stated SAIA originally agreed to provide a second opinion but had not done so.

Mr. Tunstall said he has not worked much since his May 2019 injury. He worked light duty from May 19 to October 1, but SAIA now requires a full-duty release before he can return to work. According to Mr. Tunstall, Dr. Hayes will not return him to full duty until he is released from the orthopedic. He asked the Court to order SAIA to provide a panel of spine specialists, since Dr. Lovell will no longer treat him, and to pay temporary disability benefits totaling $28,724.45.[2] He claimed entitlement to temporary total disability benefits from December 28, 2018, to February 28, 2019, and ongoing benefits from October 2, 2019. He also claimed he is owed temporary partial benefits between March 29 and May 22, 2019.

In response, SAIA maintained that Dr. Lovell, Mr. Tunstall's panel-selected neurosurgeon whose causation opinion is presumed correct, found nothing in Mr. Tunstall's imaging studies that he considered work-related. In addition, it contended that no record supported Mr. Tunstall's claim that his current complaints are causally-related to his January 2017 injury. Further, it argued that no record supported Mr. Tunstall's claim that he should be off work for his January 2017 injury. According to SAIA, Mr.

[1] Dr. Murrell's report said that Mr. Tunstall presented for an IME, but the parties introduced a panel from which Mr. Tunstall selected Dr. Murrell for his May 2019 work accident.

[2] The parties agreed to a compensation rate of $863.13 and that the carrier overpaid temporary disability benefits by $920.81.

Tunstall's provider at Champion Orthopaedics released him to return to work on February 17, 2020, after his car accident. Therefore, it claimed he could return to work.

**Findings of Fact and Conclusions of Law**

At an Expedited Hearing, Mr. Tunstall must provide sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court holds Mr. Tunstall would not likely prevail at a hearing on the merits regarding entitlement to a new panel or additional temporary disability benefits.

Mr. Tunstall argued that Dr. Lovell refused to treat him further. Therefore, he claimed entitlement to a panel of spine specialists from which to choose a new authorized physician.

On the surface, this case is reminiscent of *Limberakis v. Pro-Tech Security, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53 (Sept. 12, 2017). Much like Dr. Park in *Limberakis*, Dr. Lovell wrote in his February 2019 note, "I am finished with the patient's evaluation, work up and treatment. I am releasing him. He stays at a full duty work status and no follow-up is given." However, in *Limberakis*, compensability of the employee's injury was undisputed. *Id.* at *5. Here, compensability is contested, as SAIA claims that authorized physician Dr. Lovell determined that Mr. Tunstall's current complaints were not related to his January 2017 work accident.

Thus, to prevail on his request for additional medical treatment, Mr. Tunstall must prove that his condition "arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2019). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that "the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Medical evidence is generally required to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Berdnik v. Fairfield Glade Cmty. Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10-12 (May 18, 2017). Under Tennessee Code Annotated section 50-6-102(14)(E), "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence."

Applying these principles to the facts of this case, the Court holds this is not an obvious, simple and routine case, and medical evidence is required to establish a causal relationship. Moreover, Dr. Lovell's causation opinion is presumed correct, as Mr. Tunstall selected him from a panel. Dr. Lovell reviewed updated MRIs and concluded he

observed nothing work-related. He also noted that the radiologist described the canal narrowing from L3-S1 as a congenital finding.

Mr. Tunstall presented no medical opinion to rebut Dr. Lovell's causation conclusion. He relied on Dr. Murrell's August 23 report, but Dr. Murrell's report simply concluded that the May 2019 accident did not cause any new injury. While Dr. Murrell recommended follow-up with the authorized physician for Mr. Tunstall's January 2017 accident, he never specifically related Mr. Tunstall's current complaints to the January 2017 accident. Mr. Tunstall pointed to the Impression/Plan section of Dr. Murrell's report to show the doctor related his stenosis at L4-5 to his work injury. The report states, "Radiographic evidence of some degree of stenosis at L4-5 *on related to his work injury*." (Emphasis added). The Court finds it is unclear what Dr. Murrell meant by this statement.

Mr. Tunstall also relied on Dr. McGaughey's recommendation for a second surgical evaluation, Dr. Lovell's recommendation for a second opinion, and Dr. Giel's recommendation for a spine surgeon evaluation. However, SAIA fulfilled Dr. McGaughey's recommendation when it sent Mr. Tunstall back to Dr. Lovell for an evaluation in February 2019. Further, Dr. Murrell's evaluation fulfilled Dr. Giel's recommendation. Finally, Tennessee Code Annotated section 50-6-204(a)(3)(C) only entitles an employee to a second opinion when a physician recommends surgery. Here, no doctor recommended surgery. Therefore, the Court holds that Mr. Tunstall did not rebut Dr. Lovell's causation opinion and further holds he has not presented sufficient evidence to show a likelihood of prevailing at a hearing on the merits regarding entitlement to a panel of spine specialists.

As for temporary disability benefits, the proof shows that Dr. Lovell placed Mr. Tunstall at MMI on June 6, 2018, and released him to full-duty work. Dr. McGaughey did not change Mr. Tunstall's work status during pain management from October 2018 to February 2019. When Mr. Tunstall returned to see Dr. Lovell in February 2019, he kept him on full-duty status, and Mr. Tunstall worked until his May 14 accident. After the May 14 accident, Dr. Hayes and Dr. Giel placed him on restricted duty, and SAIA accommodated those restrictions. Mr. Tunstall worked light-duty through October 1.

An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Mr. Tunstall introduced no proof to show he was off work or under restrictions between December 28, 2018, and February 28, 2019, or between March 29, 2019, and May 13, 2019. Moreover, any temporary

benefits that might be owed between May 14 and May 22 or after October 1 have not been causally connected to his January 2017 injury. Thus, the Court holds that Mr. Tunstall is not entitled to temporary disability benefits at this time.

IT IS, THEREFORE, ORDERED as follows:

1. Mr. Tunstall's request for medical and temporary disability benefits is denied at this time.

2. This case is set for a telephonic Status Hearing on **May 25, 2020, at 8:30 a.m. Central Time.** You must call toll-free at 866-943-0014 to participate in the hearing.

ENTERED April 1, 2020.

_____
**Judge Deana C. Seymour**
**Court of Workers' Compensation Claims**

APPENDIX

Technical record:

TR1. Petition for Benefit Determination
TR2. Dispute Certification Notice, along with Employer's additional disputed issues
TR3. Request for Expedited Hearing, with Mr. Tunstall's affidavit
TR4. Employer's Pre-Expedited Hearing Brief with attachments
TR5. Employee's Pre-Hearing Brief with attachments

Exhibits:

1. Wage Statement
2. Pay history log
3. Temporary disability payment log
4. Medical records filed by Employer on February 26, 2020
5. Medical records filed by Employee on February 26, 2020
6. Spreadsheet explaining agreed-upon average weekly wage and compensation rate
7. Dr. Murrell's February 11, 2020 note
8. Dr. Hayes's February 17, 2020 note

9.     Five panels (Collective)
10.    Concentra record for February 17, 2020
11.    Champion Orthopaedics return to work slip
12.    Mr. Tunstall's deposition

## **CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on April 1, 2020.

| Name | Certified Mail | U.S. Mail | Email | Service sent to: |
|------|---------------|-----------|-------|------------------|
| Monica Rejaei, Employee's Attorney | | | X | mrejaei@nstlaw.com |
| Newton Anderson, Employer's Attorney | | | X | sna@spicerfirm.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*